IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| JOHN PLOPPER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff and Counter Defendant, | ) |  |
| v. | ) | No. 23-05029-CV-SW-BP |
|  | ) |  |
| KENAN LEE MARTINEZ, | ) |  |
|  | ) |  |
| Defendant and Counter Claimant. | ) |  |

## ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM AND (2) DISMISSING DEFENDANT'S COUNTERCLAIM WITHOUT PREJUDICE

Plaintiff filed this suit against Defendant, a former Deputy with the Barry County Sheriff's Office. The Amended Complaint advances a single count against Defendant in his individual capacity, alleging he used excessive force.[1] Defendant, acting pro se, filed an Answer that included a counterclaim for battery.

Now pending is Defendant's Motion for Summary Judgment, which seeks summary judgment with respect to both Plaintiff's claim for excessive force and Defendant's counterclaim for battery. The Court has considered the parties' arguments and concludes (1) the Motion, (Doc. 21), should be **GRANTED** insofar as Defendant requests summary judgment on Plaintiff's claim but (2) Defendant's counterclaim should be **DISMISSED WITHOUT PREJUDICE.**

---

[1] The caption to Plaintiff's Suggestions in Opposition states Defendant was sued in both his individual and official capacities. However, the caption to the Amended Complaint, (Doc. 9), indicates Defendant is sued only in his individual capacity, and the Amended Complaint does not otherwise suggest Defendant is sued in his official capacity. Moreover, a suit against Defendant in his official capacity would be deemed to be a suit against Barry County, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), yet (1) the Amended Complaint does not include any allegations that would make Barry County liable, (2) Barry County has never been served, and (3) the Return of Service on Defendant, (Doc. 4), also indicates Defendant is sued in only his individual capacity. For these reasons, the Court does not regard Plaintiff as having sued Defendant in his official capacity.

# I. BACKGROUND[2]

Before discussing the events giving rise to this case, the Court makes three observations. First, not all the facts presented by the parties are relevant to the issues before the Court, and the Court will limit its discussion to the facts necessary to (1) provide context and (2) resolve the legal issues. Second, the parties agree on many facts. Finally, the Record includes recordings from several cameras. Plaintiff has attempted to controvert events depicted in the recordings, but "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). This rule applies when a party attempts to controvert facts depicted in a video by relying on contrary testimony or an affidavit; in such circumstances, the Court may treat the facts depicted in the video as established even if a party or witness disputes them under oath. *Id*. at 380-81; *see also, e.g.*, *Brown v. City of St. Louis*, 40 F.4th 895, 899 (8th Cir. 2022); *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017); *Aipperspach v. McInerney*, 766 F.3d 803, 808 (8th Cir. 2014). Thus, the Court may rely on facts depicted in the videos even if Plaintiff denies them.

With these observations in mind, the Record establishes the following facts: On or about March 18, 2022, Plaintiff was arrested by officers from the Cassville Police Department after they received a report that he was intoxicated and disorderly outside a convenience store. He was then taken to Mercy Hospital in Cassville. Video Exhibit D[3] is from the bodycam of one of the arresting officers; its depiction of Plaintiff confirms that he was intoxicated. After he received treatment, Plaintiff was taken to the Barry County Sheriff's Office to be detained.

Video Exhibit E is from a still camera in the booking area at the Barry County Sheriff's Office. Video Exhibit F is from the bodycam of a law enforcement officer in the booking area.

---

[2] All page numbers are those generated by the Court's CM/ECF system.

These two videos depict the relevant events from different angles, and some details apparent in one video are not depicted in the other. Additionally, Video Exhibit E does not provide sound, while Video Exhibit F does.

Collectively, Video Exhibits E and F establish that Plaintiff was brought into the booking area with his hands handcuffed behind his back. He was escorted to a bench where two other people were sitting; one of those people was directed to move to a different part of the booking area. Plaintiff was able to (and on two occasions did) stand up and move along the bench on his own volition. His demeanor and actions (such as his difficulty standing) suggest he was still under the influence of alcohol.

While sitting on the bench, Plaintiff asked Defendant if he could urinate in the shower. Defendant told him he could not, and Plaintiff responded by asking "[c]an I smack the f--- out of you?" Defendant approached Plaintiff, and Plaintiff—while still seated—kicked his foot straight out and into Defendant's leg or groin area.[4] Defendant then reached for Plaintiff as he stood up; after standing, Plaintiff turned, and Defendant wrapped his arm around Plaintiff's neck or collarbone area. Plaintiff attempted to escape from Defendant's grasp, but Defendant maintained the hold and wrestled him to the ground. Another officer brought a restraint chair almost immediately, and Defendant maneuvered Plaintiff into it. Acting alone, however, Defendant was unable to get Plaintiff into the restraint chair properly, so he held him in place by putting his knee on Plaintiff's chest until more law enforcement officers arrived (which took approximately one minute and forty-five seconds). On two occasions (less than three seconds each) he placed one hand on Plaintiff's neck. However, at no time was Plaintiff's ability to breathe affected and Plaintiff never lost consciousness (as confirmed by his near-constant diatribe). When the other

---

[3] The Video Exhibits are contained on a flash drive. The Court refers to them as "Video Exhibit __" to differentiate them from the documents attached as exhibits to Plaintiff's Suggestions in Support.

officers arrived, they secured him in the restraint chair and Defendant removed his knee from Plaintiff's chest.

## II.  DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing "that there is no genuine issue of material fact and [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).

In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence, *e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), and "should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018) (quotation omitted).  A party opposing a motion for summary judgment may not simply deny the allegations but must point to evidence in the Record demonstrating the existence of a factual dispute.  Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010).

### A.  Plaintiff's Claim for Excessive Force

The Due Process Clause protects pretrial detainees from the excessive use of force, and the analysis focuses on whether the force used was objectively unreasonable. *E.g.*, *Glover v. Paul*, 78

---

[4] In his Suggestions in Support, Defendant states that he approached Plaintiff "in an effort to have him secured to the booking room bench after th[e] threat," (Doc. 22, p. 11), but identifies no evidence in the Record to support this

F.4th 1019, 1021-22 (8th Cir. 2023). "To analyze that issue, [the Court] consider[s] whether the actions of a governmental officer are 'rationally related to a legitimate nonpunitive governmental purpose,' and whether the actions 'appear excessive in relation to that purpose.'" *Id*. at 1021 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). The assessment of reasonableness must be made "from the perspective and with the knowledge of the defendant officer [and] must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." *Kingsley*, 576 U.S. at 399-400 (2015). Circumstances to be considered include:

> (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of injury inflicted, and (4) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Id*. at 402 (cleaned up); *see also Lombardo v. City of St. Louis, MO*, 141 S. Ct. 2239, 2241 (2021).

Here, the uncontroverted facts demonstrate Plaintiff's hands were handcuffed behind his back, but he was otherwise unrestrained. He retained the ability to stand and move, and with that degree of freedom he kicked Defendant. There was thus an obvious need to further restrain Plaintiff to keep him from kicking other people—but Plaintiff resisted, which justified Defendant's use of force to gain control of Plaintiff and put him in the restraint chair.

It is true, as Plaintiff points out, that Defendant put his knee on Plaintiff's chest. However, the Record demonstrates (1) Defendant did so because he had no other way to control Plaintiff until others arrived to help position Plaintiff in the restraint chair, (2) as soon as Plaintiff was restrained, Defendant removed his knee, and (3) Defendant's use of his knee in this manner did nothing more than keep Plaintiff from getting out of the chair before other officers arrived.

---

proposition. Ultimately, it does not matter: Defendant did not violate Plaintiff's rights by approaching him, and as discussed above, Plaintiff kicked Defendant before Defendant did anything to Plaintiff.

5

Plaintiff also characterizes Defendant as having used a "choke hold." Specifically, he describes Defendant's initial hold on Plaintiff—where he grabbed Plaintiff from behind by placing his arm around the front of Plaintiff's neck/collarbone—as a choke hold. Even if Defendant's arm was around Plaintiff's neck, it was there very briefly (and only because Defendant attempted to twist away from Defendant's efforts to restrain him and thereby placed his back toward Defendant). Plaintiff's claim he was subjected to a chokehold may also be directed to Defendant's actions after he maneuvered Plaintiff into the restraint chair. As noted, Defendant had his hand on Plaintiff's neck twice; both occasions were very brief and appear to be efforts to keep Plaintiff from getting out of the restraint chair.

The degree of force, the length of time at issue, and the surrounding circumstances demonstrate none of these events was objectively unreasonable, particularly when considering the legitimate need to restrain Plaintiff's freedom of movement and to prevent him from kicking other people. Accordingly, the Court concludes that, as a matter of law, Defendant did not violate Plaintiff's Due Process rights.[5]

## B. Defendant's Counterclaim for Battery

The Court lacks an independent basis for jurisdiction over Defendant's counterclaim. It does not arise under federal law, so there is no jurisdiction under 28 U.S.C. § 1331, and Plaintiff and Defendant are both citizens of Missouri, so jurisdiction is lacking under 28 U.S.C. § 1332.[6] The Court had supplemental jurisdiction over the counterclaim because it arose from the same set of operative facts as Plaintiff's claim. *See* 28 U.S.C. § 1367(a); *Murphy v. Florida Keys Elec. Co-op. Ass'n*, 329 F.3d 1311, 1319-20 (11th Cir. 2003). However, the Court "may decline to exercise supplemental jurisdiction" when the claims within its original jurisdiction—here, Plaintiff's federal

---

[5] Defendant also argues that (1) he is entitled to qualified immunity and (2) any injuries Plaintiff suffered were too slight to support a claim for excessive force. However, having determined Defendant did not violate Plaintiff's rights, there is no need for the Court to address these issues.

claim—has been dismissed. *Id.* § 1367(c)(3); *see also Innovative Home Health Care, Inc. v. P.T-O.T Assocs. of the Black Hills*, 141 F.3d 1284, 1287-88 (8th Cir. 1998).

The Court declines to continue exercising supplemental jurisdiction over Defendant's counterclaim. The Docket Sheet reflects no depositions have been taken, and it appears the only discovery that has taken place has been the procurement of the Video Exhibits. Discovery has not been completed, and trial is set almost a year from now. Given the early stage of discovery and the case as a whole, the Court exercises its discretion to dismiss the counterclaim without prejudice.

### III. CONCLUSION

Defendant's Motion for Summary Judgment, (Doc. 21), is **GRANTED IN PART**, and Plaintiff is granted summary judgment on Plaintiff's claim. Defendant's counterclaim for battery is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Date: <u>December 19, 2023</u>

<u>/s/ Beth Phillips</u>
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] The Court also thinks the amount in controversy on the counterclaim is less than $75,000, but there is no need to address that issue.